IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

IN THE MATTER OF THE SEARCH OF:

A BLACK TCL BRAND MODEL 6165S
CELLULAR TELEPHONE, BEARING
IMEI #351443620117496, CURRENTLY
LOCATED AT THE SPRINGFIELD,
MISSOURI, POLICE DEPARTMENT,
321 EAST CHESTNUT EXPRESSWAY,
SPRINGFIELD, MISSOURI

Case No. 23-SW-2027DPR

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Lee Walker, a Violent Crimes Against Children (VCAC) Task Force Officer (TFO) with the Federal Bureau of Investigations (FBI) being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I have been employed as a police officer with the Springfield, Missouri, Police Department (SPD), located in Greene County, Missouri, since 2004. I have also been a member of the Southwest Missouri Cyber Crime Task Force (SMCCTF) since 2016, and a member of the FBI VCAC since 2021. As an investigator with these entities, I have been tasked to investigate computer crimes, including violations against minors. I have gained expertise in the conduct of such investigations through training in seminars, classes, and everyday work related to conducting these types of investigations. I have attended trainings provided by the Internet Crimes Against Children Program, the Federal Bureau of Investigation, and the Missouri Internet Crimes Against Children (ICAC) Task Force. I have authored, executed, or assisted in over 100 search warrants on the state and federal level.

2. As part of this affiant's duties with the FBI, this affiant investigates criminal

violations relating to the production, receipt, possession, and distribution of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A.

3. The statements in this affidavit are based on my personal observations, training and experience, investigation of this matter, and information obtained from other agents and witnesses. Because this affidavit is being submitted for the limited purpose of securing a search warrant, this affiant has not included each and every fact known to me concerning this investigation.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. This affiant has set forth the facts necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2251, 2252, and 2252A, are contained within the following electronic device – a black TCL brand model 6165s cellular telephone bearing IMEI #351443620117496 (hereinafter referred to as "the Device"), that was seized by the United States Probation Office (USPO) on December 6, 2022, by USPO Joel Woodward. The Device was located while conducting a search of Steven G. Reed's vehicle while it was parked at Mercy Hospital, in Springfield, Missouri, within the Western District of Missouri. The Device is currently stored at the SPD evidence storage area, located at 321 East Chestnut Expressway, Springfield, Greene County, Missouri, within the Western District of Missouri.

5. This affidavit is in support of an application for a search warrant for evidence, fruits, and instrumentalities of the foregoing criminal violations that relate to the knowing possession, receipt, distribution, and/or production of child pornography. The property to be searched is described in the following paragraphs and fully in Attachment A. This affiant requests the authority to search and/or examine the seized items, specified in Attachment B, as instrumentalities, fruits, and evidence of crime.

6.     The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

7.     This affiant has probable cause to believe that evidence of violations of 18 U.S.C. §§ 2251, 2252, and 2252A, involving the use of a computer, in or affecting interstate commerce, to produce, receive, possess, and/or distribute child pornography, are located in and within the aforementioned property described below. Thus, as outlined below, and based on my training and experience, there is probable cause to believe that evidence, fruits, and/or instrumentalities of the aforementioned crimes are located in this property.

## PROBABLE CAUSE

8.     On September 9, 2016, Steven G. Reed (hereinafter "Reed") was sentenced to 78 months in the Bureau of Prisons (BOP), followed by a 10-year term of Supervised Release, for a violation of 18 U.S.C. § 2252, that is, receipt and distribution of child pornography in case number 14-03109-CR-S-MDH. On June 24, 2020, Reed began his term of Supervised Release under the supervision of the United States Office of Probation and Parole.

9.     On November 29, 2022, a search of Steven G. Reed was requested by United States Probation and Parole Officer (PO) Joel Woodward and approved that same day by Chief PO Gary Broyles based upon reasonable suspicion of a violation of supervised release. Specifically, PO Woodward received information from a source that Reed was in possession of an unapproved Internet capable device (cellular telephone) and having contact with a minor without prior approval, both of which are violations of his supervised release.

10.     On December 6, 2022, information was received by the Probation and Parole Office that Reed was on his way to Mercy Hospital in Springfield, Missouri, to visit his father. A Probation and Parole Office search team responded to the Mercy Hospital parking lot to execute

Reed's search condition on December 6, 2022, at approximately 09:45 hours.

11. PO Woodward and Senior PO Jeremy Truitt contacted Reed inside the hospital. A short time later, they exited the hospital and entered the parking lot. Reed was informed that his person, vehicle, and cellular telephone were being searched pursuant to his search condition. PO Woodward conducted a search of Reed's person and located nothing of concern, however Reed admitted that he was in possession of an unapproved cellular telephone and that it was in his vehicle. He stated that nothing illegal was on the phone, but that it did contain adult pornography. He provided the keys to the vehicle.

12. Senior PO Craig Fieser conducted a pre-search video of the vehicle. During the search, the following items were discovered and seized:

    a. A TCL smart phone recovered by Senior PO Fieser from under the driver's side floormat; and

    b. A Cannon digital camera recovered by Senior PO Fieser from under the front passenger seat.

13. On December 7, 2022, Supervising PO Dan Schepers downloaded the contents of Reed's cellular telephone, identified as a TCL, Model 6165s (the Device). An examination of the contents of the Device revealed several pornographic videos of males engaged in various sexual activity. The males may be minors, but Supervising PO Schepers was unable to positively determine their ages. In addition, Reed had two email accounts on the cellular telephone: predatormimic@gmail.com, and overandunder8@gmail.com.

14. On February 14, 2023, the affiant met with Supervising USPO Schepers, collected the Device, and secured the Device at the SPD evidence storage area.

## TECHNICAL TERMS

15. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Computer: The term "computer" as defined in 18 U.S.C. § 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

   b. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

   c. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed

and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

    d.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

    e.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those

signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

      f.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments. or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include GPS technology for determining the location of the device.

      g.      Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

h.      Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

i.      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

j.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

16.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, computer, digital camera, portable media player, GPS, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

18. There is probable cause to believe that things that were once stored on the Device may still be stored there, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete

this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

    d.    Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

19.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend

on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e.    Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

20.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

21.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

22.    Based on the above facts, this affiant believes probable cause exists for the issuance of a warrant to search the Device described more fully in Attachment A for (1) property that constitutes evidence of the commission of a criminal offense; (2) contraband, the fruits of a crime, or things otherwise criminally possessed; and/or (3) property designated or intended for use or

which is or has been used as the means of committing a criminal offense, namely possible violations of 18 U.S.C. §§ 2251, 2252, and 2252A, including, but not limited to, the items listed in Attachment B.

    Further your affiant sayeth naught.

_____
Lee Walker
Task Force Officer
Federal Bureau of Investigations

    Subscribed and sworn to before me in my presence via telephone on the ___22nd___ day of March 2023.

_____
HONORABLE DAVID P. RUSH
Chief United States Magistrate Judge
Western District of Missouri